IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| MELISSA WALTERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:21cv204-MHT |
| | ) | (WO) |
| JACKSON HOSPITAL, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

Plaintiff Melissa Walters filed this lawsuit against
defendant Jackson Hospital, her former employer,
asserting that she was subjected to various forms of
discrimination and retaliation in violation of several
federal statutes, including Title VII of the Civil Rights
Act of 1964 (Title VII), as amended, 42 U.S.C. §§ 1981a
and 2000e through 2000e-17, and Title I of the Americans
with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12111
through 12117.  The court has subject-matter jurisdiction
over these claims pursuant to 28 U.S.C. § 1331 (federal
question) and § 1343 (civil rights) and 42 U.S.C. § 2000e
(Title VII) and § 12117 (ADA).  This case is now before

the court on Walters's motion to enforce a settlement agreement and for attorneys' fees.  Oral argument was held on the motion on June 6, 2022.  For the reasons stated below, the motion will be denied.


                              I.

    In mid-March 2022, counsel for Walters and Jackson Hospital began mediating this case with a private mediator.  According to the representations of the parties, during an initial period of days they transmitted offers over the phone through calls with the mediator, then began communicating by text messages sent through the mediator.  All negotiations reportedly occurred by way of an intermediary.

    On March 18, Walters's attorney sent the following message to the mediator, who forwarded the message to the hospital's attorney:

        "My client will settle her Title VII and ADA
        claims for $[amount deleted to protect its
        confidentiality] subject to the money being paid
        in 10 days and it not being termed back pay.  She

> agrees to keeping the terms of the settlement
> confidential except as to her husband,
> accounting and the normal situations (court
> order etc). She agrees to no rehire. Jackson
> pays any mediation cost. ..."

Jackson Hospital's Attorney's Texts (Doc. 18-1); *see also*

Walters's Attorney's Texts Part One (Doc. 24-1)[1].  The

hospital's attorney then sent the following response to

the mediator, who transmitted it to Walters's attorney:

> "Ok. We agree to above--on the condition that
> confidentiality starts now and that on the back
> pay, fine but she will be responsible for any
> and all taxes as we won't withhold anything and
> she will have to supply a W9."

Jackson Hospital's Attorney's Texts (Doc. 18-1).  In her

brief in support of the enforcement motion, Walters's

attorney represents that she then sent the following text

to the hospital's attorney through the mediator: "I will

give him a W9 for my portion and a W9 from her for her

---

1.  The copies of text messages attached to Walter's
reply brief (Doc. 24-1 & Doc. 24-2) cut off the top of
the screen, where it would state to whom the message was
sent.  Walters makes clear in her motion that emails were
transmitted through the mediator.  *See* Motion to Enforce
Settlement Agreement (Doc. 17) at para. 2.

portion." Motion to Enforcement Settlement Agreement (Doc. 17) at 2; *see also* Walters's Attorney's Texts Part Two (Doc. 24-2). It is unclear from the evidence whether the mediator forwarded that message to the hospital's attorney. Walters's attorney represents that, on March 21, she provided W-9s for herself and her client to the hospital's attorney. (There is no evidence in the record to support this contention, but the court will assume that it is true.)

On March 24, Jackson Hospital's attorney emailed a general release of claims to Walters's counsel. Because Walters was unwilling to sign the general release, her attorney streamlined the release, removing any waiver of claims beyond the federal claims brought in the lawsuit and taking out a number of other provisions. The hospital's attorney responded, "No deal. We do not accept this streamlined version of the release. Most specifically, we categorically reject the limitation of the release to the two specific legal claims pled in the

**4**

case (Title VII and ADA)."  March 28, 2022, Email (Doc. 18-5).  The hospital's attorney went on to explain:

> "A general release was the primary condition of settlement communicated via [the mediator], first of all.  Beyond that, in 26 years of practicing law, I cannot recall ever recall a plaintiff who balked at a general release of all claims arising prior to the execution of the settlement document.  If we accepted this and then Walters sued [Jackson Hospital] next week for some other claim, where would that leave me with regard to my client? Perhaps merely terminated in the best-case scenario.  So, no, this is a no-brainer for the defendant, and exceedingly easy for me to explain to the hospital in the event the settlement falls apart."

*Id.*

Counsel for both sides attempted to work out their differences on the release, and made considerable progress, but could not come to a final agreement on the release provisions because Walters would not agree to a complete release of all potential federal claims against Jackson Hospital based on events transpiring before the settlement, and the hospital insisted on a release containing that condition.

5

## II.

In her motion, Walters asks the court to enforce the purported settlement agreement set forth in the text messages between counsel.  She moves the court to enter an order requiring Jackson Hospital (1) to pay her "the agreed upon settlement proceeds with interest," Motion to Enforcement Settlement Agreement (Doc. 17) at 3, (2) to accept a draft written settlement agreement, attached to her motion, which contains a release of only the specific claims presented in this case, *see* Walters's Proposed Settlement Agreement (Doc. 17-1) at para. 3, and (3) to pay her attorneys' fees.

"A district court ordinarily has the power to enforce a settlement agreement entered into by litigants while litigation is pending before the court."  *Hogan v. Allstate Beverage Co.*, 821 F. Supp. 2d 1274, 1278 (M.D. Ala. 2011) (Thompson, J.) (citation omitted). "Principles

6

governing general contract law apply to interpret
settlement agreements." *Id.* at 1279 (quoting *Resnick v.
Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 (11th
Cir. 2000)).

"A number of courts have recognized the authority of
a trial court to summarily enforce a settlement agreement
without an evidentiary hearing." *Murchison v. Grand
Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994).
The court must grant a request for an evidentiary hearing
"[w]here material facts concerning the *existence* or *terms*
of an agreement to settle are in dispute." *Id.* (citing
*Callie v. Near,* 829 F.2d 888, 890 (9th Cir. 1987)
(emphasis in original)). Here, both sides agreed at the
June 6 oral argument that the court could resolve the
enforcement motion on the current record without any
evidentiary hearing. More specifically, as framed by the
court at then, they agreed that they were "in pretty much
agreement as to the underlying facts" and that it was
"just a question of what conclusions to draw from those

facts." Rough Draft Transcript of June 6, 2022, Oral
Argument (hereafter "R.D. Transcript") at 5; see also *id.*
(Walter's attorney: "I don't see the need for hearing.");
*id* at 12 (hospital's attorney: "Well, Judge, going back
to your question about a hearing, my view on that is that
you can decide this on the current papers."). Having
considered the evidence and the representations of
counsel, the court now resolves the enforcement motion
on the current record.

It is unclear whether state contract law or federal
common law governs in this matter, which involves a
settlement of federal claims. Federal courts have gone
both ways. *See Hogan*, 821 F. Supp. 2d at 1279 (discussing
both approaches; citing *Fulgence v. J. Ray McDermott &
Co.,* 662 F.2d 1207, 1209 (5th Cir. 1981)[2] (using federal
common law to determine whether an oral settlement

---

2. In *Bonner v. City of Pritchard*, 661 F.2d 1206,
1209 (11th Cir. 1981), the Eleventh Circuit adopted as
binding precedent all decisions of the former Fifth
Circuit issued before October 1, 1981.

agreement of a Title VII claim existed); *Resnick,* 227 F.3d at 1350 (applying Florida law to construe a settlement under the ADA); *Hayes v. National Serv. Indus.,* 196 F.3d 1252, 1253 (11th Cir. 1999) (applying Georgia law to construe a Title VII settlement)).  The court need not decide which approach to take here, as the result is the same under state and federal law.

"Alabama law typically requires a signed, written document to create a validly executed settlement." *Hogan*, 821 F. Supp. 2d at 1279 (citing Ala. Code § 34-3-21 (providing that an attorney authorized to settle a client's case "has authority to bind his client, in any action or proceeding, by any agreement in relation to such case, made in writing")).  That said, if sufficiently detailed, an exchange of correspondence may create an enforceable contract under Alabama law.  *See generally Mays v. Julian LeCraw & Co.*, 807 So. 2d 551 (Ala. Civ. App. 2001) (letters between counsel memorializing oral settlement agreement treated as

9

enforceable). Federal common law, in contrast, does not necessarily require that a settlement be reduced to writing. *See Fulgence*, 662 F.2d at 1209.

Under Alabama law, "[t]he elements of a valid contract include: 'an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract.' The rule is that the minds of the parties must meet as to all the essential features of a contract." *Walker v. Walker*, 144 So. 3d 359, 364 (Ala. Civ. App. 2013) (citations omitted; cleaned up). "Whether parties have entered a contract is determined by reference to the reasonable meaning of the parties' external and objective actions." *Id*. (citations omitted). "[S]ettlement agreements, like other agreements, are not valid when there has been no meeting of the minds with regard to the final terms of the agreement." *Grayson v. Hanson*, 843 So. 2d 146, 150 (Ala. 2002).

Walters contends that the text messages exchanged

10

via the mediator constitute a written agreement to settle the case that is valid under Alabama law.  The court disagrees.   First,  while  the  first  text  message constituted Walters's offer as to the amount and certain other terms of a potential settlement, the hospital's response  added  new  conditions,  and  accordingly constituted a counteroffer of settlement terms, rather than an acceptance.  *See Hogan*, 821 F. Supp. 2d at 1280 (citing *Cook's Pest Control, Inc. v. Rebar,* 852 So. 2d 730, 736 (Ala. 2002) (quoting Joseph M. Perillo, *Corbin on Contracts* § 3.32 at 478 (rev. ed., 1993)) ("If the purported acceptance attempts to restate the terms of the offer,  such  restatement  must  be  accurate  in  every material  respect. ... An  acceptance  using  a  different form makes no contract.  A variation in the substance of the offered terms is material, even though the variation is  slight.")).   Nor  did  Walters  clearly  accept  the hospital's counterproposal.  Walters responded with a text  to  the  mediator  that  she  would  provide  W9

11

forms--addressing one of the hospital's demands--but she did not give her position as to the other demand or say anything about accepting. *See* Walters's Attorney's Texts Part Two (Doc. 24-2). And, as noted earlier, it is not clear that the message was passed on to the hospital's counsel.

Second, and more importantly, the text messages do not reflect a meeting of the minds as to all essential terms of the settlement agreement. To begin, while the text messages about the money amount say nothing about a release, the lawyers' correspondence in the days and weeks following the exchange of text messages makes clear that a release had been contemplated by both parties. Indeed, Walters conceded during the June 6 oral argument that she anticipated at the time of the text exchanges that there would be some sort of release. *See* R.D. Transcript at 7 (Walters's attorney: "I knew a release would be exchanged by the parties which mirrored the terms of the settlement."... The court: "Okay. But you

knew that there would be a release."... Walters's attorney: "... Yes, Your Honor. To answer your question, yes, Your Honor."... The court: "... Does this case come down to the issue of whether there was a final agreement on the release?"... Walters's attorney: "Yes, Your Honor, in my opinion."). Further, based on the correspondence and releases exchanged, it is clear that, when the texts were exchanged, the parties had not reached a meeting of the minds as to the terms of release. The correspondence reflects that the hospital's attorney just assumed the parties would be using the same type of general release of claims he and Walters's attorney had used to settle a similar case weeks earlier. *See* March 24, 2022, Email from Jackson Hospital's Attorney with Proposed Release (Doc. 18-2) at 1 ("Here is the Walters release. Essentially the Dennison document, with some tweaks. Let me hear from you. Thanks."); *see also id.* (Doc. 18-2) at 2-10 (proposed release). Finally, it is undisputed that from that point forward, the parties were

13

unable to reach a meeting of the minds as to terms of the release, and there continued to be a wide gap between them.

For these reasons, the court concludes that the parties had not reached, as required by Alabama law, a written settlement that reflected a meeting of the minds.

Under federal common law, the result is the same. While federal common law may allow for the enforcement of an oral settlement agreement, the parties do not contend there was an oral agreement here. Beyond this tolerance of oral agreements, "federal contract law is largely indistinguishable from general contract principles under state common law." *In re Deepwater Horizon*, 786 F.3d 344, 354 (5th Cir. 2015). It is a bedrock principle of contract law that an enforceable contract is not formed unless there is a meeting of the minds as to all essential terms. *See id*. at 357. Here, as discussed above, counsel never reached a meeting of the minds on an essential piece of the settlement--the

14

terms of the release agreement.  Therefore, there was no binding settlement agreement under federal law.

Finally, at one point during the June 6 oral argument, the court put aside further discussion of the requirements of state and federal law and posed the simple and straightforward pragmatic question of exactly what the court-enforced agreement should say, in particular, as to a release, if the court were to grant Walter's enforcement motion.  In her motion, Walters asked the court to order Jackson Hospital to accept a specific proposed written settlement, submitted with the motion, that contained a release of only the specific claims brought in this lawsuit.  However, in response to the court's question, she changed her position, arguing at one point that the hospital should be ordered to accept a settlement agreement with no release at all.

If the agreement were to say nothing at all as to a release, this would mean that Walters would get money and the hospital would get no release whatsoever in return,

not even from new claims based on the very same facts underlying the claims in this case.    This result would be contrary to the concession Walters's attorney made earlier at the oral argument that the parties did contemplate a release as part of their settlement. *See* R.D Transcript at 7 (Walters's attorney: "I knew a release would be exchanged by the parties which mirrored the terms of the agreement."... The court: "Okay.   But you knew that there would be a release."... Walters's attorney:  "... Yes, Your Honor.   To answer your question, yes, Your Honor.").    Moreover, the proposed written settlement that she wants the court to enforce contains a provision expressly providing for a release, albeit only as to the federal claims asserted in this case. *See* Walters's Proposed Settlement Agreement (Doc. 17-1) at para. 3 ("In exchange for the consideration previously described herein, Walters ... does hereby fully, finally and forever release and discharge Jackson Hospital & Clinic, Inc., ... of and from the charges presented in

16

the Litigation."). Therefore, in the motion before the court, Walters is not asking the court to enforce a settlement without a release.

If the court-enforced release were to provide for the release of only the federal claims in this litigation as proposed by Walters's attorney in her motion, the release, again, would be contrary to her concession at the June 6 oral argument that the hospital never agreed to this. *See* R.D Transcript at 5 (Watkins's attorney: "I do agree with Mr. Wilson[, the hospital attorney,] that there has been a dispute with regard to the language in the release."); *id.* at 7 (The court: "... [A]nd you contend there was also an agreement regarding the release; is that correct? Watkins's attorney: "I don't agree that there--Mr. Wilson's client has not agreed to the language of the release."); *id.* at 8-9 (The court: "Did he[, the hospital's attorney,] ... inform you that he and his client had accepted that last version of the release that you sent to them?" Watkins's attorney: "No,

17

Your Honor.").[3]  In short, were the court to grant Walters's motion for enforcement, the court is unable to envision an agreement that it could impose that would reflect the parties' intent as to all material aspects.

Walters also moves the court to impose attorneys' fees for litigating her motion to enforcement settlement agreement.  That request will be denied too.

### III.

Accordingly, it is ORDERED that the motion to enforce the settlement agreement and for attorneys' fees (Doc.

---

3.  The release negotiations reached a point where Watkins's attorney agreed to release more than just the specific claims in this litigation.  She offered to accept "a broad release carving out" another type of federal claim, not asserted in the complaint, which, she said, she might still want to pursue later. R.D Transcript at 8.  But as stated above, Watkins's attorney also agreed that the hospital's attorney did not accept this "last version." *Id.* at 8-9.  Therefore, the bottom line is that Watkins's attorney conceded at oral argument that the parties never reached an agreement on what exactly the release provision, which the parties contemplated should be a part of any settlement, should say.

18

17) is denied.

    DONE, this the 7th day of July, 2022.

                        /s/ Myron H. Thompson
                   UNITED STATES DISTRICT JUDGE