# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | |
|---|---|
| **MELISSA WALTERS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: 2:21-CV-00204-MHT-SMD |
| | )                               (WO) |
| **JACKSON HOSPITAL,** | ) |
| | ) |
| **Defendant.** | ) |

## FINAL PRETRIAL ORDER

A pretrial hearing was held in this case on July 20, 2022, via videoconference, wherein the following proceedings were held and actions taken:

1.     PARTIES AND TRIAL COUNSEL:

Plaintiff: Melissa Walters

Counsel for Plaintiff
Jamie A. Johnston
Jamie A. Johnston, P.C.
P. O. Box 4663
Montgomery, AL 36103
Phone: (334) 265-8789
jamie@jjohnstonpc.com

Defendant: Jackson Hospital & Clinic, Inc.

Counsel for Defendant
Benjamin C. Wilson
Morgan E. Chappell
Rushton, Stakely, Johnston, & Garrett, P.A.
P.O. Box 270
Montgomery, Alabama 36101

Phone: (334) 206-3100
bcw@rushtonstakely.com
mec@rushtonstakely.com

COUNSEL APPEARING AT PRETRIAL HEARING:

Ms. Johnston appeared on behalf of the Plaintiff and Mr. Wilson appeared at the pretrial hearing on behalf of the Defendant.

2.   JURISDICTION AND VENUE:

The parties concede that this Court has jurisdiction over the claims at issue per 28 U.S.C. §1331, §1334(a)(4), 28 U.S.C. §2201, and 42 U.S.C. §2000(e) et seq. Personal jurisdiction is not contested. Venue is proper in the Northern District of the Middle District of Alabama. The Court finds jurisdiction and venue is proper.

3.   PLEADINGS:

Complaint (Doc. 1) and Answer (Doc. 10).

4.   CONTENTIONS OF THE PARTIES:

   (a)   Plaintiff's Contentions

The Plaintiff is Melissa Walters. She has over ten years of experience in the medical industry, with a high concentration of work and training in medical coding. She was employed by Jackson Hospital during all relevant times where she worked in the Coding and CDI Department under Christina Perkins who in turn reported to David Ralston. She brings claims of gender, race and disability discrimination against her former employer Jackson Hospital.

The Plaintiff, a Caucasian female, suffers from Type I Diabetes which was disclosed to her employer at the time of her hiring. After reporting her discrimination concerns, the Plaintiff was placed under suspended without pay. Since her suspension, the Plaintiff has suffered a loss of income and benefits. She believes she is entitled to back pay, front pay, lost benefits, prejudgment interest, damages for emotional distress, punitive damages and attorney's fees.

### *Gender Discrimination Claims*

Ms. Walters was employed by Jackson Hospital until she was suspended without pay on January 13, 2020. During her employment, she was discriminated against because of her gender. Ms. Walters, a white female, worked in the CDI and Coding Department of Jackson Hospital. She worked alongside James Faulkner under the ultimate supervision of David Ralston (department head). James Faulkner, a male, was allowed to deviate from the policies and procedures and requirements placed upon Ms. Walters without being subjected to punishment while Ms. Walters faced disciplinary action, including an indefinite suspension without pay.

For instance, Ms. Walters was told by her superiors that she was not allowed to begin working until after 6:30 a.m. each day and if she reported to work or began her work earlier she would be subjected to disciplinary action. Unlike the treatment imposed on Ms. Walters, Jackson Hospital allowed James Faulkner to begin work well before 6:30 a.m. and he in fact was there working prior to 6:30 a.m. James

Faulkner was not punished while Ms. Walters was reprimanded and ultimately suspended indefinitely without pay.

In addition, Ms. Walters was informed she must be certified to remain employed with Jackson Hospital. However, Jackson Hospital did not require James Faulkner, a male, to be certified. He did not complete his certification, yet he remained employed with Jackson Hospital and Ms. Walters was suspended without pay indefinitely on January 13, 2020.

Ms. Walters reported to David Ralston, the overall department head, about this unfavorable and discriminatory treatment. In response, Ms. Walters was suspended without pay.

### *Race Discrimination*

Part of the requirements placed on Ms. Walters during her employment with Jackson Hospital (prior to her suspension on January 13, 2020) was certification which the evidence will establish was not equally applied. Several African American employees within Ms. Walters' department similarly situated to Ms. Walters were not required to be certified. Plaintiff contends Jackson Hospital discriminated against her because of her race by imposing more stringent employment requirements on her than African Americans similarly situated. Plaintiff will present testimony from LaPortia Webster, Marie Fannin and LaTanya Poole establishing that all were similarly situated employees within Ms. Walter's department and that

they were not certified yet they were not subjected to the same adverse employment action (indefinite suspension without pay) as Ms. Walters.

In addition, Ms. Walters faced policies and procedures that were more stringent and difficult to abide than her equal African American counterparts. Supervisors in the department vocalized to Tracy Taylor and Kevinetta McCullough (both of whom are African American) that those policies and procedures do not apply to them. Some of the policies and procedures imposed on Ms. Walters and not on these African American employees in particular include but are not limited to, hours, work load, type of caseload assignments, and location of work. Plaintiff anticipates calling as witnesses in this trial Christine Perkins, Tracy Taylor, Kevinetta McCullough, LaPorche Webster, Marie Fannin, LaTanya Poole, James Faulkner and David Ralston, among others who will all establish the disparity in application of the rules and regulations, requirements for positions similarly held by Ms. Walters, and the discriminatory misconduct and the retaliation that followed Ms. Walters vocalization of the discrimination, including but not limited to the imposition of a PIP and ultimately a suspension without pay.

### *Americans with Disability Act Violations*

Ms. Walters suffers from Type I Diabetes for which her employer, Jackson Hospital was aware at the onset of her hiring. Because of her disability, Ms. Walters requested reasonable accommodations be made by Jackson Hospital, including but

not limited to extensions in time to take any testing required by the hospital. She further requested opportunities to take her blood sugar and to have breaks sufficient to allow for appropriate nutrition to maintain her blood sugar levels. Ms. Walters contends that Jackson Hospital refused to allow Ms. Walters sufficient breaks, opportunities to undertake diabetic testing, and testing accommodations for certification tests in violation of the Americans with Disabilities Act. Rather than providing her reasonable accommodations, Jackson Hospital placed her on a PIP and ultimately suspended her employment without pay indefinitely.

### *Hostile Work Environment*

Ms. Walters also contends that she was subjected to an abundance, nearly daily in fact, harassment and discrimination within Jackson Hospital. She alleges that the Coding & Clinical Documentation Improvement Department of Jackson Hospital in Montgomery, Alabama was run by Christina Perkins during the relevant time period and that Ms. Perkins soon after she became director, approximately ten employees reported concerns of discrimination, retaliation and hostile work environment to Ms. Perkins' supervisor and the Human Resources Department. Moreover, at least **thirteen** individuals within the department resigned their employment because of the discrimination, harassment, and hostile work environment. Despite this repeated reporting, Jackson Hospital refused to investigate and address these concerns. Ms. Perkins remained at the helm of the department

6

despite the complaints and the working conditions did not improve. Ms. Walters was one of the many employees who complained about the work environment, including but not limited to discrimination.

    Ms. Walters contends that Ms. Perkins on a daily basis yelled at employees, got in employees faces, threatened employees, cursed at employees, lied, rudely interacted with employees and vendors, abruptly reacted, harassed employees, imposed restrictions and expectations on employees that could not be met, engaged in misconduct to interfere with employees productivity, bullied employees, engaged in illegal conduct, verbally abused employees, called employees slang words, violated Jackson Hospital's own policies and procedures, discriminated against employees, and exhibited symptoms of withdrawal from illegal substances. Ms. Walters was an employee who experienced herself all of the discriminatory, hostile, unlawful, and unacceptable conduct of Ms. Perkins. Ms. Walters reported Ms. Perkins' misconduct on numerous occasions. Ultimately, Ms. Walters was suspended without pay in retaliation for her reporting of the discrimination and hostile environment. Ms. Walters intends to call as witnesses approximately ten witnesses who can attest to the hostile work environment. Ms. Walters contends that Ms. Perkins conduct was outside the scope of any person's reasonable expectation of an acceptable work environment. The employees working under Ms. Perkins have been physically and emotionally injured, in many if not most cases have been forced

to resign because of the shear fact they could no longer tolerate Ms. Perkins unruly, unacceptable, unwanted, and illegal behavior. Many of those employees (former and present) have been in coding and clinical documentation for twenty plus years. Their testimony will establish that they have never experienced anything remotely similar to the working environment of the Coding & Clinical Documentation Improvement Department of Jackson Hospital. Eventually, after Ms. Walters was improperly suspended, Jackson Hospital did terminate Ms. Perkins.

As a consequence, Ms. Walters suffered a significant loss in income and benefits. She believes she is entitled to back pay, front pay, lost benefits, prejudgment interest, damages for emotional distress, punitive damages, and attorneys' fees.

The Plaintiff intends to call the following witnesses to support her contentions: Melissa Walters; Tommy Walters; Christina Perkins; LaTanya Poole; LaPorche Webster; Marie Fanning; Misti Merrill; Jordan Bartkowicz; Rachel Mulligan; James Faulkner; Lisa Lawrence; Sharilynn Daniel; Linda Bowman; Cheryl Davis; Celeste Russo; Nicole Grier-Benton; Arwilda Hamilton; Vicki Dennison; Rolanda Brown; Tracey Taylor; David Ralston; Karen Harrison; Penne Drake; Kimberly Baggott; Kenyada Rogers; Ben Wells; Basil Burney, M.D.; Carey Williams, NP, Tracy Taylor, Kevinetta McCullough and Melissa Strops.

    (b)    Defendant's Contentions

Jackson Hospital employed Walters on February 18, 2019. Walters, a Caucasian female, was hired as a coding specialist to be assigned to the hospital's coding unit. Her unit supervisor was Christina Perkins, also a Caucasian female.

Walters' duties involved assigning ICD-9 (now 10) codes to hospital records in order to facilitate reimbursement by third-party payors. Coders were expected to meet certain productivity standards. Once a coder consistently satisfied the productivity standard, he/she would be allowed to work from home. When Walters met the threshold, she was allowed to work from home. Thereafter, Walters would occasionally clock in very early in the morning, before the workday was supposed to begin and before the hospital intended for her to be "on the clock." Moreover, Walters' productivity declined once she began working from home and remained consistently below the standard throughout much of the summer and into the fall of 2019. On September 10, 2019, Walters was advised that she could not skip breaks in order to clock out early. She was also advised that she could not clock in before 6:30 a.m.

On December 6, 2019, Perkins contacted Walters to discuss her continued productivity shortcomings. Walters was informed that she needed to improve dramatically or she would be asked to return to exclusively on-site work. On December 12, 2019, Walters was on site at the hospital, whereupon she and Perkins further discussed her productivity. Walters became very upset and demanded to

9

speak to David Ralston, the assistant vice president over the coding unit. Walters refused to speak with Perkins and became very angry. In light of this, Perkins sent Walters home for the day. Walters nonetheless "stormed out of the office" and went in search of Ralston, where she proceeded to "cause a scene."

On January 2, 2020, Walters received a performance improvement plan (PIP) concerning her productivity as well as her lack of certification as a coder. The hospital hired Walters under the belief that she possessed a certain certification in coding but later learned that this was not the case. Walters was given six months to achieve the requisite certification. Walters maintains that the hospital's insistence on her obtaining these credentials is evidence of racial discrimination as she contends that certain African-American employees were held to different/more lenient standards. See Count III. Jackson Hospital contends that African-American employees identified by Walters are not suitable comparators to Walters. Moreover, Walters has suffered no adverse employment event associated with her Caucasian race.

Later in January 2020, Perkins and Ralston met with Walters to address the PIP. Walters steadfastly refused to engage in any substantive discussion regarding her performance. In light of this, the hospital felt it had no choice but to discipline Walters for refusing to engage or cooperate, so her employment was suspended. Walters submitted a resignation letter on January 23, 2020.

Walters' gender discrimination claim (Count II) is without merit. She contends that a male employee, James Faulkner, was not held to the same standards as she was in terms of accounting for her hours worked. Walters claims that Faulkner "worked for the same supervisors," who allowed him to clock in "well before 6:30 a.m." and to work without certification that they required her to pursue. Mr. Faulkner, who is a licensed registered nurse, works in a different unit and is not otherwise similarly situated to Walters (i.e., he is not a proper comparator). Moreover, Walters was not subjected to disciplinary or adverse employment action because of any deviation from policies and procedures from which Faulkner was simultaneously exempted; she was disciplined solely due to her abject refusal to cooperate and engage with hospital representatives attempting to address her productivity and other aspects of her employment.

In the same vein, Walters cannot establish a claim of hostile environment discrimination based on her race or gender (Count I). The hospital contends that, to the extent Perkins may have occasionally demonstrated belligerent language in the course of her supervisory duties, it was not limited to Walters and not associated with the fact that Walters is Caucasian or female. In this regard, Perkins did not create an actionable hostile environment so severe or pervasive that it altered the fundamentals of the workplace or was of a type that no reasonable employee would be expected to tolerate it.

With regard to the retaliation claim (Count IV), Walters did not engage in protected conduct as contemplated by Title VII and was not in fact suspended or otherwise retaliated against for making complaints about Perkins' conduct/behavior. Moreover, any complaint that Walters offered regarding Perkins was generalized and directed at Perkins' managerial behavior rather than any animus based on race or gender.

Walters' ADA claim (Count V) is similarly without merit. She maintains that the hospital violated the ADA by not allowing her additional time to achieve the coding certification – time that she contends was warranted on account of the fact that she is a diabetic. On December 16, 2019, in an internal job application for another position, Walters expressly and clearly denied having any disability, and she cannot establish that additional time to pass the certification test was, in fact, a reasonable (and necessary) accommodation on account of diabetes. Finally, Walters was suspended because of her refusal to cooperate/engage with the hospital (including the PIP, which in part addressed the certification need), not because of any protected disability.

5. <u>STIPULATIONS BY AND BETWEEN THE PARTIES</u>:

The parties stipulate to the following:

- That Jackson Hospital employed Melissa Walters and is a corporation under the laws of the state of Alabama and is an employer as defined in

> Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, and American's with Disabilities Act.
>
> – Walters' employment commenced on February 18, 2019
>
> – Walters' employment ended on January 23, 2020

***

At the pretrial hearing on July 20, 2022, Walters clarified that:

(1) Walters's claim of gender discrimination is based on Jackson Hospital's allowing James Faulkner to deviate without punishment from the following two policies: (a) being allowed to start work before 6:30 a.m., and (b) the certification requirement.  She does not contend that the defendants engaged in differential application of other policies on the basis of gender.

(2) Walters's claim of race discrimination is based on the differential application of solely the certification requirement, not of other policies or requirements.

(3) Walters's claim under the Americans with Disabilities Act is a reasonable-accommodations claim and

13

does not have disparate-treatment component. The claim is that Jackson Hospital denied her three reasonable accommodations for her Type 1 Diabetes: it refused to allow her (a) sufficient breaks, (b) opportunities to undertake diabetic testing, and (c) additional time to take certification tests.

(4) Walters's hostile work environment claim is that she was harassed because she is female and because of her disability and/or her request for accommodations for her disability. She does not allege a racially hostile work environment.

(5) Walters's retaliation claim is that she was retaliated against because she requested reasonable accommodations under the Americans with Disabilities Act. It is not based on any complaints of race or gender discrimination.

(6) Walters no longer seeks injunctive relief.

***

It is ORDERED that:

(1) The jury selection and trial of this cause, which

is to last five days, are set for September 12, 2022, at 10:00 a.m., at the United States Courthouse in Montgomery, Alabama;

(2) A trial docket will be mailed to counsel for each party approximately two weeks prior to the start of the trial term;

(3) Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the exhibit list and a sufficient number of copies of each photostatically reproducible exhibit for opposing counsel, the courtroom deputy clerk, the law clerk, the jurors, and the judge to each have a set of the exhibits;

(4) Trial briefs ((a) summarizing the evidence to be presented at trial, (b) setting forth the elements of each and every claim and defense at issue and how the evidence does or does not satisfy those elements, and (c) addressing any evidentiary issues that may arise at trial) are required to be filed by September 5, 2022;

(5) All deadlines not otherwise affected by this

...

order will remain as set forth in the uniform scheduling order (Doc. 15) entered by the court on April 30, 2021; and

(6) All understandings, agreements, deadlines, and stipulations contained in this pretrial order shall be binding on all parties unless this order be hereafter modified by order of the court.

DONE, this the 20th day of July, 2022.

        /s/ Myron H. Thompson
        **UNITED STATES DISTRICT JUDGE**